**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

|  |  |  |
|---|---|---|
| | : | |
| RUBEN S. SOTO, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | No. 08-4701 |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of Social Security, | : | |
| | : | |
| Defendant. | : | |

_____:

**MEMORANDUM RE: SOCIAL SECURITY APPEAL**

**Baylson, J.** _____ **July 28, 2009**

Plaintiff, Ruben S. Soto, seeks judicial review of the decision by the Commissioner of the

Social Security Administration ("Defendant") denying his application for Social Security

disability insurance benefits and supplemental security income ("SSI") under Titles II and XVI of

the Social Security Act ("the Act"). For the reasons described below, the Court will reverse the

decision of the Administrative Law Judge and award benefits to Plaintiff.

**I.     Factual Background**

**A.     Procedural History and the ALJ Decision**

Plaintiff first applied for disability insurance and SSI benefits on October 26, 2004,

alleging disability beginning March 23, 2004 due to a work-related injury. (R. 73-75). The

Administration denied Plaintiff's application on January 24, 2005 (R. 29-32), but Plaintiff did

not appeal that decision. Plaintiff filed new applications on June 24, 2005 (R. 78-89), which

were again denied by the Administration on October 31, 2005 (R. 35-38). Plaintiff then

requested a hearing before an Administrative Law Judge ("ALJ").  (R. 41-42).  The hearing was held before ALJ Paula Garrety on July 20, 2007.  (R. 57, 602-44).  At the hearing, the ALJ heard testimony from Plaintiff, Plaintiff's wife, Plaintiff's friend, and a vocational expert.  (R. 602-44).

In a written decision on August 24, 2007, the ALJ denied Plaintiff's application for benefits.  (R. 19-24).  The ALJ first concluded that Plaintiff suffered from medically determinable impairments, namely degenerative changes of the lumbar spine, obesity, and myofascial pain syndrom, that limited his ability to work.  (R. 21).  The ALJ also found that Plaintiff's testimony regarding his injury and his limitations was generally credible and that the recognized impairments could reasonably be expected to produce the symptoms alleged.  (R. 22). However, the ALJ then concluded that, based on the entire record, Plaintiff could perform light work that allowed for Plaintiff to alternate between sitting and standing positions.  (Id.).  The vocational expert had testified at the hearing that such jobs did exist in the national and local economy, and the ALJ held that Plaintiff was therefore not disabled.  (R. 24).

In reviewing the record, the ALJ chose not to give controlling weight to the opinion of Plaintiff's treating physician, explaining that the opinion was "inconsistent with other credible medical opinion evidence and . . . with the clinical findings on examination and diagnostic imaging studies."  (R. 23).  Instead, the ALJ emphasized the opinion of the examining physician hired by the state agency as well as the RFC assessment performed by a state medical consultant. (R. 22).  The ALJ also described Plaintiff's treatment as "conservative."  (Id.).

Plaintiff filed a Request for Review by the Commissioner's Appeals Council on September 9, 2007, which was denied on July 30, 2008.  (R. 6-8).  Plaintiff then timely filed this action pursuant to § 405(g) of the Social Security Act, 42 U.S.C. § 405(g).

      **B.**     **Evidence in the Record**

         **1.**     **Initial Diagnosis and Treatment**

Plaintiff has had several treating physicians since he was first injured in March 2004. Plaintiff initially saw Dr. Dolphin at HealthWorks from April 2004 until August 2004. (R. 187-204). Dr. Dolphin ordered an MRI of Plaintiff's spine, taken in April 2004, which showed mild disk bulging at L2-L3, mild disk bulging at L4-5 with some neural foramina on the left, and mild desiccation of the L5-S1 disk. (R. 213). At the same time, Plaintiff also saw Dr. Wertz, a pain management consultant, who gave Plaintiff several epidural injections to help alleviate the pain in his back and buttocks. (R. 206-11). After examining the MRI results, Dr. Wertz noted that Plaintiff's "low back pain may indeed be discogenic, but it does not appear to be severe enough to warrant . . . surgery." (R. 207). Dr. Wertz concluded, "I am concerned that [the injection] will only provide him with temporary benefit and that he is going to simply need to come to terms with the fact that he may well indeed have some degree of ongoing low back pain . . ." (R. 207). After another examination, Dr. Wertz opined that Plaintiffs low back and leg pain "is likely generated from his degenerative changes in the L5-S1 disk and perhaps by the bulging of the L4-L5 disk." (R. 208).

Because Plaintiff continued to experience pain in his back despite the epidurals, Plaintiff saw Dr. Lueddeke, a chiropractor, from August to September 2004. (R. 219). Dr. Lueddeke requested another MRI in August 2004, which produced similar results to the previous test. (R. 215). Plaintiff also saw Dr. Sewards, an orthopedist, from September 2004 until December 2004. (R. 243-50). In his examination notes, Dr. Sewards referred to Plaintiff's "low back spasm and active scoliosis" as well as an "antalgic type gait" and "degeneralized deconditioning of both

lower extremeties." (R. 244). Dr. Sewards also observed that Plaintiff's "back is straight with severe bilateral paralumbar spasm." (R. 245). As a result, Dr. Sewards ordered a "fairly aggressive active physical therapy program with core conditioning therapeutic exercise, [and] neuromuscular training . . ." (R. 246). However, Dr. Sewards noted that "prognosis for recovery is somewhat guarded and the possibility of surgery although not presently recommending [sic] cannot be ruled out in the future." (Id.).

### 2.      Treatment by Dr. Stolz

In September 2004, upon referral by Dr. Sewards, Plaintiff also began seeing Dr. Ralph Stolz, who provided the bulk of Plaintiff's pain management treatment over the next several years. (R. 238, 296-362, 392-414, 423-551). Dr. Stolz saw Plaintiff two to three times each week, (R. 522), and the record contains extensive treatment notes by Dr. Stolz for each visit he had with Plaintiff. According to Plaintiff's brief, between September 21, 2004 and May 25, 2007, Plaintiff received intramuscular injections from Dr. Stolz on 169 different dates, and on 75 of those visits, Plaintiff also received trigger point injections in the L4-5 region. (Pl.'s Brief at 5 n.5). Dr. Stolz's initial treatment note indicates that "plaintiff could hardly walk," "he has a loss of his normal lumbar lordotic curve," and he "presents with marked exquisite pain on palpation, severe myospasm, and an almost complete loss of range of motion of the dorsolumbosacral spine with any movement." (R. 411). Throughout his treatment of Plaintiff, Dr. Stolz made similar findings during his examinations, emphasizing Plaintiff's pain and tenderness in his back and lower right extremity. (See, e.g., R. 297, 301, 305, 318, 326, 438, 444, 449, 451, 456, 480, 487, 501, 510, 514, 531, 532, 535, 549).

Pursuant to his treatment with Dr. Stolz, Plaintiff was admitted to the hospital for

osteopathic manipulative treatments under general anesthesia and/or intravenous muscle relaxant and steroid treatments on multiple occasions from 2005 though 2007.  (R. 238, 259-60, 276-77, 388-91, 557-60).  During his hospital stays, Plaintiff was seen by several consulting physicians, including Dr. Nathanson, a neurologist, and Dr. Fellechner, a physiatrist.  Dr. Nathanson's notes indicate a "straightening of normal LS curve" with "muscle spasm" (R. 263) and tenderness along the spine with muscle spasm (R. 269).  A radiology report from May 2005 also notes "unchanged straightening of the normal lumbar lordosis, but otherwise vertebral structure, alignment and disc heights are normal."  (R. 293).

In an opinion letter from February 2007, Dr. Stolz stated that he sincerely felt Plaintiff would like to return to work, but the pain in his back and lower extremities had not improved. (R. 521).  Dr. Stolz explained that Plaintiff had also developed restless leg syndrome, obesity, and hypertension and that despite the continual injections, Plaintiff's pain and radiculopathy remained quite strong.  (R. 522-23).  Dr. Stolz wrote "I do feel with a reasonable degree of medical certainty that this patient is fully and completely disabled and will not be able to return to a meaningful form of employment due to the extreme nature and extensiveness of his post-traumatic pain syndrom."  (R. 522-23).  He further concluded that Plaintiff's "prognosis for life is fair at best and that his condition at this time is fair."  (R. 523).

Dr. Stolz responded to several interrogatories regarding his conclusions about Plaintiff's disability.  In his answers, Dr. Stolz conceded that the laboratory diagnostic studies did not confirm his findings of lumbar herniated disc disease with compression of associated nerve roots. (R. 572).  However, he explained that the loss of a normal lumbar lordotic curve, as indicated in the diagnostic studies, combined with his clinical findings of severe muscle spasm, pain in

-5-

response to light palpation, ambulatory dysfunction, and inability to change position supported his diagnosis. (Id.).  Dr. Stolz also noted that he did not believe Plaintiff was exaggerating or malingering his condition or symptoms.  (R. 574).

### 3.   Other Treatment and Medical Evidence

Plaintiff also participated in a physical therapy program at Good Shepard for a period of time in mid 2005 (R. 363-75), though Plaintiff apparently stopped therapy after he over exerted himself, causing additional pain (R. 521).  The notes from the initial therapy sessions indicate problems with Plaintiff's gait, which had decreased trunk rotation, as well as with Plaintiff's posture.  (R. 372-73).  Furthermore, the therapist observed tenderness in Plaintiff's lumbar spine through palpation.  (R. 373).

In October 2005, a medical consultant completed an Residual Functional Capacity ("RFC") evaluation for Plaintiff, based on the consultant's review of the Plaintiff's medical records.  The consultant found that Plaintiff could occasionally lift twenty pounds and frequently lift ten pounds.  In the RFC evaluation, the consultant also indicated that Plaintiff could stand, walk, or sit for a total of six to eight hours a day and found that Plaintiff was partially credible.  (R. 376-82).

In August 2005, Plaintiff was seen by an independent medical examiner, Dr. Weis, in relation to his worker's compensation claim.  (R. 417-22).  Dr. Weis's examination revealed tenderness in the midline of the lumbar spine and an active range of motion in forward flexion of only 20 degrees, limited by increased back pain.  However, Dr. Weis found no spasm.  Dr. Wies noted Plaintiff's gait had a "waddle component."  (R. 418).  After reviewing the medical record, Dr. Weis concluded that "the diagnostic studies did not demonstrate any significant

abnormalities" and that "despite the patients ongoing symptoms . . . he has a structurally stable spine and it is safe for him to do at least a light duty level of work activity." (R. 420). Furthermore, Dr. Weis explained that "the patient's course of events and his current symptomology appears to me to be in excess of what I would expect upon review of the report of the MRI and . . . medical records." (R. 420). Dr. Weis could not explain why Plaintiff was experiencing ongoing pain. (R. 421).

Finally, in July 2006, Dr. Falatyn evaluated Plaintiff at the request of Dr. Stolz. Dr. Falatyn's examination indicated positive straight leg raise bilaterally, which is an indication of disc herniation, although he noted fairly good hamstring flexibility in a lying posture. (R. 555-56). Furthermore, Dr. Falatyn explained that the MRI from February 2005 showed minimal lumbar disc disease from L4 to S1 but no disc bulging and concluded that "this is simply muscle spasm." (R. 556). Dr. Falatyn recommended stretching and some form of aerobic activity. (R. 556).

## II.   **Legal Standards**

### A.   **Jurisdiction**

The Social Security Act provides for judicial review by this Court of any "final decision of the Commissioner of Social Security" in a disability proceeding. 42 U.S.C. § 405(g) (2000).

### B.   **Standard of Review**

On judicial review of the Commissioner's decision, the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." Id. "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion . . . .'" Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005) (quoting Reefer v. Barnhart, 326

F.3d 376, 379 (3d Cir. 2003)).  In reviewing the record for substantial evidence, this Court must "not 'weigh the evidence or substitute [its own] conclusions for those of the fact finder.'" Rutherford, 399 F.3d at 552 (quoting Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992)). However, an ALJ must consider all the evidence, medical and non-medical, in the record, and where an ALJ does not consider such evidence, a court cannot conclude that the ALJ's opinion was supported by substantial evidence.  Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121-123 (3d Cir. 2000).

This Court's review of the legal standards applied by the ALJ is plenary.  See Allen v. Barnhart, 417 F.3d 396, 398 (3d Cir. 2005).

### C.     Disability Claims Analysis

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

The Commissioner of the Social Security Administration has promulgated regulations requiring a five-step analysis to determine the eligibility of claimants for benefits.  First, if the claimant is engaged in substantial gainful activity, the claim must be denied.  20 C.F.R. §§ 404.1520(b), 416.920(b).  Second, the claim must be denied unless the claimant is suffering from a severe impairment or combination of impairments that significantly limits physical or mental ability to do basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  Third, if the claimant's severe impairment(s) meets or equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claim is approved.  20 C.F.R. §§ 404.1520(d), 416.920(d).

Fourth, if the claim is not approved under Step 3, the claim will be denied if the claimant retains the residual functional capacity ("RCF") to meet the physical and mental demands of his or her past relevant work.  20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).  Finally, if the claimant does not retain the RFC to perform past relevant work and there is no other work in the national economy that the claimant can perform, considering his or her RFC, age, education, and past relevant work experience, then the claim will be approved.  20 C.F.R. §§ 404.1520(g), 416.920(g).

III.   **Discussion**

Plaintiff raises several grounds for reversing the decision of the ALJ: (1) the ALJ erred in rejecting the opinions of Plaintiff's treating physician in favor of those of an examining physician and non-examining medical consultant; (2) the ALJ's determination of Plaintiff's RFC is inconsistent with her finding that his assertions were generally credible; (3) the ALJ did not take proper account of Plaintiff's obesity; (4) the ALJ's decision was not supported by substantial evidence because her hypothetical question to the vocational expert failed to consider all of Plaintiff's limitations; and (5) the ALJ failed to properly consider the testimony of Mr. Soto's wife and friend provided at the hearing.  This Court concludes, based on a combination of Plaintiff's arguments, that the ALJ's decision lacked substantial evidence and thus improperly found that Plaintiff was not disabled.

A.   **The ALJ failed to give appropriate weight to the opinion of Plaintiff's treating physician.**

Plaintiff asserts that the ALJ did not give sufficient weight to the opinion and treatment notes of Plaintiff's treating physician, Dr. Stolz.  According to the Social Security Regulations,

the Administration generally gives "more weight to opinions from [an applicant's] treating

sources, since these sources are likely to be the medical professionals most able to provide a

detailed, longitudinal picture of [the applicant's] medical impairments and may bring a unique

perspective to the medical evidence that cannot be obtained from the objective medical finds

alone or from reports of individual examinations . . ." 20 C.F.R. §§ 404.1527(d)(2),

416.927(d)(2). If the treating source's opinion "is well-supported by medically acceptable

clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial

evidence in your case record, we will give it controlling weight." Id. When controlling weight is

not given to a treating source's opinion, the Administration will assign the opinion specific

weight after considering other facts, such as the length of the treatment relationship and

frequency of examinations, the nature and extent of the treatment relationship, supportability of

an opinion with medical signs and laboratory findings, consistency with the record as a whole,

and specialization. 20 C.F.R. §§ 404.1527(d), 416.927(d).

The Third Circuit has held that an "ALJ may not simply ignore the opinion of a

competent, informed, treating physician." Gilliland v. Heckler, 786 F.2d 178, 183 (3d Cir.

1986). Such an opinion cannot be rejected where there is no contrary medical evidence.

Frankenfield v. Bowen, 861 F.2d 405, 408 (3d Cir. 1988); see also SSR 96-2p, 61 Fed. Reg.

34490, 34490-92 (July 2, 1996) (explaining that a "well-supported" medical opinion only

requires reasonable support for the opinion and that a treating physician's opinion "need not be

supported by all of the other evidence . . . as long as there is no other substantial evidence in the

case record that contradicts or conflicts with the opinion"). Notably, it is an error of law to reject

the treating physician's opinion without an adequate explanation, and an ALJ "cannot reject

evidence for no reason or for the wrong reason."  Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir.

1999).

In this case, after discussing the medical opinions of the examining physician and the

medical consultant, the ALJ decided to give "considerable weight" to those opinions.  (R. 22-23).

In contrast, the ALJ determined that the opinion of the treating physician, Dr. Stolz, deserved

minimal weight.  (R. 23).  Despite the voluminous evidence in the record provided by the treating

physician, Dr. Stolz, the ALJ dismissed his opinion with a single sentence:

> Although claimant's treating physician, Dr. Stolz, is of the opinion that claimant
> would be unable to perform any work on a regular and continuing basis . .. , this
> opinion is inconsistent with other credible medical opinion evidence and is also
> inconsistent with the clinical findings on physical examination and diagnostic
> imaging studies, which would not be expected to result in such extreme functional
> limitations.

(R. 23).  Based on the standards described above, this cursory treatment of Dr. Stolz's opinion is

deficient for several reasons, and as a result, the decision of the ALJ that Plaintiff can perform

light work lacks substantial evidence.

### 1.   The ALJ's explanation for rejecting Dr. Stolz's opinion was inadequate.

Firstly, the ALJ improperly disregarded Dr. Stolz's opinion without an adequate

explanation.  See Plummer, 186 F.3d at 429.  The ALJ's single, conclusory remark on Dr. Stolz's

findings does not explain how his opinion is inconsistent with the other medical evidence or the

diagnostic test results.  The discussion also does not mention the extensive treatment relationship

between Dr. Stolz and Plaintiff or the voluminous notes in the record from Dr. Stolz.  The record

contains approximately 200 separate notes by Dr. Stolz containing details on Plaintiff's medical

condition and the treatment plan, culminating in a highly detailed opinion dated February 25,

2007.  Despite this record, the ALJ simply states that Dr. Stolz's opinion should be given little weight when compared with the other evidence in the record.  Although an ALJ may justifiably chose to not give controlling weight to a treating physician's opinion, the ALJ must explain that decision, and thus the rejection of Dr. Stolz's opinion here required a more extensive explanation.  The ALJ should have considered the factors outlined in § 404.1527(d), which must be used to determine the weight given to an opinion, and more thoroughly discussed why, given those factors, the opinion should not be given substantial weight.

## 2. The ALJ improperly rejected Dr. Stolz's opinion based on inconsistency with other opinion evidence.

Furthermore, the two general reasons the ALJ did give for rejecting Dr. Stolz's opinion are generally unsupported in the record.  First, the ALJ asserted that Dr. Stolz's opinion deserved little weight because it was inconsistent with the opinions of the examining physician, medical consultant, and Dr. Falatyn, who all indicated Plaintiff could perform some limited work.  This conclusory statement not only lacks support in the record but incorrectly applies the rules governing opinion evidence.

The ALJ cannot justify giving little weight to Dr. Stolz's opinion merely because it was inconsistent with the other opinion evidence in the record where, based on the nature and extent of the relationships, the allegedly inconsistent opinions should not have been given more weight than that of Dr. Stolz.  Naturally, the differing opinions are mutually inconsistent; the ALJ could just as easily have rejected the examining physician and medical consultant's opinions based on their inconsistency with the opinion of Dr. Stolz, but she inexplicably chose to reject that of Dr. Stolz. Where there are such contradictory opinions, the ALJ should assess the other factors in §

404.1527(d) to determine which opinions deserve more weight.

According to the regulations, the nature and length of a Plaintiff's relationship with the author of a medical opinion are significant factors in determining how much weight to place on that opinion. 20 C.F.R. § 404.1527(d). Here, the examining physician saw Plaintiff once before giving his opinion, and the medical consultant never examined Plaintiff, basing his conclusions on a review of the medical record. In comparison, Dr. Stolz treated Plaintiff for nearly three years, often seeing him multiple times each week. Moreover, the examining physician and medical consultant rendered their opinions in late 2005, nearly two years before the last of Dr. Stolz's assessments in the record. Notably, at that time in 2005, Plaintiff had been experiencing some improvement from physical therapy and the injections, as chronicled in Dr. Stolz's notes (R. 296-337); however, Plaintiff experienced a set-back shortly thereafter and has been experiencing significant pain since that time. (R. 432-520, 521). The ALJ did not consider how this change in Plaintiff's condition may have affected Dr. Stolz's final opinion in 2007 or possibly undermined the outdated assessments of both the examining physician and the medical consultant.

Similarly, the ALJ improperly failed to consider other factors and gave unnecessary weight to an assessment by a treating physical therapist, Dr. Falatyn, who recommended that Plaintiff engage in regular stretching and some form of aerobic activity. (R. 23). As an initial matter, this Court does not agree with the ALJ that the opinion of Dr. Stolz is inconsistent with the recommendation of Dr. Falatyn to warrant rejection of the treating physician's opinion. Merely because an applicant can or does engage in minimal physical activity for therapy purposes does not necessarily indicate that the applicant can work a full day. In fact, in assessing an

individual's RFC, the ALJ must consider an applicant's physical abilities and capacity to work

on a regular and continuing basis, see 20 C.F.R. § 404.1545(b) (emphasis added), which is

defined as eight hours a day, five days a week in Social Security Ruling 96-8p. 1996 WL

374184, at *1. That Ruling does not foreclose the possibility that a claimant may be able to

engage in some physical activity for part of a day but still be considered disabled if he cannot

work a full day on a continual basis. Thus, Dr. Falatyn's assessment that Plaintiff can and should

engage in therapeutic stretching and aerobic activities is not inconsistent with Dr. Stolz's opinion

that Plaintiff is disabled.

Moreover, even if Dr. Falatyn's opinion was inconsistent with that of Dr. Stolz, the ALJ

again failed to weigh the other factors, particularly the nature and length of the treatment

relationship. As Dr. Falatyn's recommendation was made after a single examination, Dr. Stolz's

opinion again appears to deserve more weight under the regulations. Once again, the ALJ has

not adequately explained why she favored that of Dr. Falatyn.[1]

Interestingly, while mentioning the several medical opinions that are inconsistent with Dr.

Stolz's findings, the ALJ failed to mention any of the reports that support Dr. Stolz's opinion.

This is particularly notable for the other physicians that actually treated Plaintiff. For example,

examinations by Dr. Nathanson during Plaintiff's several hospital stays confirmed the findings of

---

[1]The ALJ also noted in a footnote that despite this recommendation, the Plaintiff appeared unwilling to comply with such recommendations for increased physical activity and would prefer to stay in bed. However, the ALJ failed to mention in her analysis that Plaintiff had previously attempted physical therapy in 2005, and had made some progress, but that Plaintiff was forced to stop after pushing beyond his limits and injuring himself further. (R. 363-75, 521). Plaintiff also testified that he does stretching and some walking at home, but that he gets fatigued and experiences pain after circling the block once. (R. 618, 622). Again, the ALJ did not consider these facts in her opinion.

tenderness and muscle spasm and the treatment course set by Dr. Stolz.  (R. 263, 269).  Similarly,

Dr. Sewards, the physician who referred Plaintiff to Dr. Stolz, also observed spasm and

straightening of Plaintiff's back and noted that prognosis for recovery was guarded.  (R. 244-46).

Dr. Wertz also opined, after examining and treating Plaintiff, that Plaintiff's pain was probably

caused by the disc problems identified in the MRI.  (R. 208).  However, the ALJ does not offer

any explanation for why she did not consider these opinions either as supportive of Dr. Stolz's

opinion or as inconsistent with the opinions of the examining physician, medical consultant, or

Dr. Falatyn.  Thus, the ALJ failed to consider all of the evidence when concluding that Dr.

Stolz's opinion was inconsistent with the other opinion evidence and therefore should be given

minimal weight.  As a result, the ALJ's rejection of Dr. Stolz's opinion, and her ultimate

conclusion, that Plaintiff could work lacked substantial evidence.

### 3. The ALJ improperly rejected of Dr. Stolz's opinion based on its inconsistency with the diagnostic testing.

The ALJ also identified the inconsistency between Dr. Stolz's opinion and the results of

the clinical examinations and diagnostic testing, namely the EKG and MRI,  as a reason for

rejecting his opinion.  This basis is also factually and legally deficient for several reasons.

As an initial matter, Dr. Stolz's opinion was not inconsistent with the results of clinical

testing.  The ALJ disregarded the results of Dr. Stolz's numerous clinical examinations, during

which he repeatedly identified tenderness upon palpation and/or muscle spasm.  (See, e.g. R.

297, 301, 305, 318, 326, 438, 444, 449, 452, 456, 480, 487, 501, 510, 514, 531, 532, 535, 549).

Those findings were confirmed by clinical exams by other examining physicians, including the

independent medical examiner, who found tenderness in Plaintiff's spine, and Dr. Falatyn, who

found muscle spasm.  (R. 418, 556; <u>see also</u> R. 244, 263).  Yet the ALJ incorrectly held that Dr. Stolz's opinion was inconsistent with the results of clinical testing and based her conclusion that Dr. Stolz's opinion deserved little weight on that factually incorrect observation.

Even more, the ALJ incorrectly found that the diagnostic testing was inconsistent with Dr. Stolz's opinion.  Although the MRIs and other laboratory diagnostic tests did not reveal a severe structural problem with Plaintiff's spine, those tests did indicate a straightening of the normal lumbar curve and minor disc bulging in various places.  Despite the ALJ's assertion to the contrary, Dr. Stolz's assessment, though not concretely verified by the diagnostic tests, is also not necessarily inconsistent with the results.  Dr. Stolz's own clinical examinations and the complaints of the Plaintiff simply suggested that Plaintiff's pain from the minor structural deformities identified in the tests was more than would generally be expected.  The testing may not have offered conclusive proof of Dr. Stolz's findings or identified a structural cause for the severity of Plaintiff's symptoms, but the testing likewise did not offer conclusive proof that Plaintiff's subjective complaints, and Dr. Stolz's opinion based on those complaints, were unreasonable or overstated.  "Careful consideration must be given to any available information about symptoms because subjective descriptions may indicate more severe limitations or restrictions than can be shown by objective medical evidence alone."  SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996).

In addition, Dr. Stolz answered interrogatories in which he explained how the results of the objective testing were not inconsistent with his opinion and diagnosis.  He stated that the limited findings of structural problems from those tests combined with his own examination and Plaintiff's subjective complaints supported his overall conclusion.  Dr. Stolz specifically noted

that he did not think that Plaintiff was exaggerating the symptoms.  Similarly, Dr. Wertz opined that the structural problems identified in the tests could have caused the Plaintiff's symptoms. Yet the ALJ did not acknowledge the interrogatory answers or Dr. Wertz's statement in her opinion.  Instead, the ALJ improperly concluded that the tests and Dr. Stolz's opinion were clearly inconsistent, without thoroughly examining all the evidence in the record.

Furthermore, even though the objective testing was nonconclusive, the ALJ cannot reject an opinion solely for the lack of supporting laboratory or diagnostic findings.  Rather than requiring such evidence in order to give any weight to a physician's opinion, the Regulations explain that such evidence will simply entitle the opinion to more weight.  20 C.F.R. § 404.1527(d)(3).  According to the Regulations, the objective medical evidence from laboratory testing must be considered along with other factors, such as the nature and length of the treatment relationship and the results of clinical diagnostic techniques.  20 C.F.R. §§ 404.1527(d), 404.1528.  As explained above, the objective laboratory testing here neither proved nor disproved Dr. Stolz's opinion, though clinical examinations by several physicians revealed muscle spasm and tenderness upon palpation.  However, instead of weighing the dearth of conclusive laboratory evidence with the other medical evidence and the other factors under § 404.1527(d), the ALJ summarily rejected Dr. Stolz's opinion without further explanation.

Notably, "limitations that are asserted by the claimant but that lack objective medical support may possibly be considered nonetheless credible," and the ALJ should not reject such a claimed symptom that is "related to an impairment and is consistent with the medical record simply because there is no objective medical evidence to support it."  Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005); see also 20 C.F.R. § 404.1529(c) ("We will not reject your

statements about the intensity and persistence of your pain or other symptoms . . . solely because the available objective medical evidence does not substantiate your claims.").  As the ALJ cannot discredit a Plaintiff's subjective complaint merely because there is no objective medical evidence, it would be inconsistent to allow the ALJ to dismiss a treating physician's opinion, based on those same unsupported subjective complaints, just because it lacks objective medical proof from laboratory testing.  The ALJ here admitted that Plaintiff's statements were generally credible and that the alleged symptoms could reasonably be expected given the impairments (R. 22), even though the laboratory testing did not identify a specific cause of the alleged symptoms. In so finding, the ALJ implicitly acknowledged that the pain could be more severe than the laboratory testing indicated.  As a result, the ALJ cannot consistently reject Dr. Stolz's opinion, founded on those same subjective complaints as well as clinical testing, due to the lack of conclusive laboratory evidence.

Thus, contrary to the ALJ's determination, Dr. Stolz's opinion is supported by the results of clinical testing upon examination and are not wholly inconsistent with the findings of the diagnostic testing.  Furthermore, the ALJ cannot reject his opinion solely because the laboratory testing did not identify a cause of Plaintiff's complaints; this is particularly true because Dr. Stolz's clinical findings support his conclusions and the ALJ has not rejected the Plaintiff's complaints despite the inconclusive laboratory testing.  The ALJ's decision to give little weight to Dr. Stolz's opinion based on the lack of consistent objective evidence is thus unfounded.

The ALJ clearly failed to provide an adequate explanation for rejecting the treating physician's opinion on either of the grounds she identified, especially given the nature and scope of the treatment relationship.  As both reasons given by the ALJ for assigning little weight to the

-18-

opinion of Dr. Stolz are unsupported given the record and the requirements under the Regulations, this Court cannot agree that Dr. Stolz's opinion was not entitled to more significant consideration.  Rather, based on the voluminous treatment records provided by Dr. Stolz, his long-term treatment relationship with Plaintiff, the frequency of his examinations and treatments of Plaintiff, the results of the diagnostic and clinical testing, the consistent medical evidence provided by other treating physicians, and the Plaintiff's credible subjective complaints, this Court finds that Dr. Stolz's opinion was entitled to significant weight.  The ALJ improperly failed to account for his opinion that Plaintiff could not work when holding that Plaintiff was not disabled, and thus the decision lacked substantial evidence.

> **B.** **The ALJ's hypothetical question to the vocational expert failed to properly take into account Plaintiff's absence from work for treatments.**

Besides improperly discrediting Dr. Stolz's opinion, the ALJ also failed to account for the impact Plaintiff's treatment has on his ability to work.  Despite crediting his subjective complaints and finding that the symptoms could reasonably be expected given the impairment, the ALJ found that Plaintiff was capable of light work based on his RFC.  However, as noted above, in assessing an applicant's RFC, the ALJ must consider his ability to do physical work on a regular and continuing basis.  20 C.F.R. § 404.1545.  The Commissioner has defined a regular and continuing basis as requiring an individual to work eight hours a day, five days a week and has explained that an RFC assessment must consider the limitations imposed by the mechanics of treatment, such as frequency, duration, disruption to routine, and side effects.  SSR 96-8p, 1996 WL 374184, at *1.  Furthermore, when determining if an applicant is disabled, the ALJ must consider whether he can engage in substantial gainful activity, which is work that involves

significant physical or mental activities and that can be done for pay or profit.  20 C.F.R. §

404.1572.  Even if the ALJ could properly conclude that Plaintiff was not physically prevented

from performing the requirements of light work for certain periods, the ALJ improperly failed to

consider whether Plaintiff's frequent treatments and breaks during the day limited his ability to

gainfully perform such work due.

Dr. Stolz and Plaintiff both explained that Plaintiff received intramuscular injections two

to three times each week.  (R. 522, 615).  Plaintiff testified at the hearing that the injections,

which are comprised of morphine and muscle relaxants, cause tiredness and fatigue, forcing him

to spend the rest of the day, and sometimes part of the following day, sleeping.  (R. 615-16).  In

response to a question by Plaintiff's counsel, the vocational expert testified that Plaintiff would

be precluded from finding any work if Plaintiff needed to leave work between four and eight

times a month, on average, to receive injections and was out of work for the remainder of that

day due to the side effects of the injection.  (R. 642-43).  Similarly, the vocational expert testified

that if Plaintiff needed to take unpredictable breaks to lie down for up to an hour, such behavior

would not be tolerated by any employer.  (R. 641-42).

Despite that testimony, the ALJ appears to have ignored either of these limiting factors in

rendering her decision that the Plaintiff is not disabled and could engage in substantial gainful

activity consisting of light work.  The ALJ found that Plaintiff did suffer from impairments

related to his back injury and that those impairments could cause his subjective symptoms, but

then concluded that those impairments did not prevent him from engaging in substantial gainful

activity at Step 5.  However, none of the other medical opinions in the record question Dr.

Stolz's treatment of Plaintiff or suggest that the treatment is unnecessary or unhelpful.  Where

there is no testimony anywhere in the record that Plaintiff's ongoing treatment for a legitimate

impairment is unnecessary, based on either exaggeration of symptoms by the Plaintiff of

improper course of treatment by the physician, the ALJ should have considered how those

treatments would affect Plaintiff's employability in the hypothetical posed to the expert.  See,

e.g., Middlemas v. Astrue, 2009 WL 578406, at *10 (W.D. Pa. March 5, 2009) (holding that the

hypothetical question posed to the vocational expert was deficient because it did not take into

account that the frequency which Plaintiff would need to take breaks to urinate might not be

tolerated by a employer); Lockley v. Barnhart, 2006 WL 1340866, at *7 (E.D. Pa. May 16, 2006)

(explaining that applicant did not meet the requirements of a RFC for light work where the

plaintiff's physician opined that he would have to miss work four times a month and the

vocational expert agreed that such limitations would preclude all work).

Yet the ALJ gave no consideration at all to the evidence that Plaintiff's treatments would

interfere with his inability to work.  As such, the ALJ improperly concluded that Plaintiff was not

disabled without considering all the relevant facts, and thus the decision lacked substantial

evidence.

**IV.   Awarding Benefits**

When this Court determines that the ALJ's decision is not supported by substantial

evidence, it also has the power to reverse and direct an award of benefits.  Allen v. Bowen, 881

F.2d 37, 43 (3d Cir. 1989) (citing Podedworny v. Harris, 745 F.2d 210, 221 (3d Cir. 1984)).  The

district court should award benefits only when "the administrative record of the case has been

fully developed and when substantial evidence on the record as a whole indicates that the

claimant is disabled and entitled to benefits."  Podedworny, 745 F.2d at 221-22.  "When faced

with such cases, it is unreasonable for a court to give the ALJ another opportunity to consider new evidence concerning the disability because the administrative proceeding would result only in further delay in the receipt of benefits." Id. at 222; see also Morales, 225 F.3d at 320 (awarding benefits where there was substantial evidence of plaintiff's disability and the case had involved considerable inexplicable delay that was not the fault of the claimant).

 In this case the record has been fully developed up to the time of the ALJ's decision in August 2007. The record contains extensive evidence from Plaintiff's treating physicians, particularly Dr. Stolz's treatment notes for three years of treatment, and from Plaintiff's several hospitalizations and physical therapy sessions. The ALJ held a hearing during which Plaintiff and a vocational expert testified. Based on the analysis in the previous section, this Court has concluded that the 2007 opinion of Dr. Stolz, which concluded Plaintiff was unable to work, should be given substantial weight. Furthermore, although this Court concluded that the ALJ did not properly consider the impact Plaintiff's necessary treatment will have on his ability to work, the vocational expert did testify on that issue, concluding that Plaintiff would be unemployable if he continued with the course of treatments he had followed for the past several years. Given the well-developed record, no additional information is necessary to determine Plaintiff's eligibility for benefits and thus there is no reason to remand this case to the ALJ for further consideration.

 Thus, this Court finds, based on the opinion of Dr. Stolz, the medical evidence from other treating physicians, the responses of the vocational expert, and the credible testimony of Plaintiff, that Plaintiff is disabled. As such, this Court will award Plaintiff disability benefits.

 An appropriate Order follows.

O:\CIVIL 07-08\08-4701 Soto v. Astrue\request for review memo.wpd